# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**CYNTHIA MIRELLA ORE**                              :

      **Plaintiff,**                              :

                                  **Civil Action No. 05-1434**

     **v.**                              :

                                  **Judge Paul L. Friedman**

**DONALD LEWIS SHERWOOD**                    :

      **Defendant.**                              :

### PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
### DOCUMENTS TO DEFENDANT DONALD LEWIS SHERWOOD

Pursuant to the rules of this court, Plaintiff requests the above-named Defendant to produce, within thirty (30) days after service of this Request, for inspection and copying, at the offices of Regan, Halperin & Long, 1919 M Street, NW, Suite 350, Washington, DC, the items requested herein complete with any changes, amendments or alterations thereto. Please note that the Defendant is to produce the **original** of all documents requested so they can be inspected and copied by Plaintiff's counsel.

### INSTRUCTIONS

(A)    In responding to these Requests, produce all documents that are in the possession of, or accessible to you, your agents, employees, and all other persons acting on your behalf.

(B)    These requests are to be regarded as continuing; therefore, you are requested to supplement your responses with such additional information as may

hereafter be obtained by you, or any person on your behalf, which will augment or otherwise modify any responses presently given.

(C)    If any of these requests cannot be responded to in full, please answer to the extent possible, the reasons for your inability to respond.

(D)    If any of the requested items are not transcribed, you are hereby requested to produce such items in written form.

## DEFINITIONS

(1)    As used herein, the term "document" or "documents" means any written, recorded, or graphic matter, however produced or reproduced and whether or not now in existence, and includes the original, all file copies, all other copies no matter how prepared, and all drafts prepared in connection with such documents, whether used or not. It further includes and is not limited to papers, books, records, catalogs, price lists, pamphlets, periodicals, letters, correspondence, scrapbooks, notebooks, bulletins, circulars, forms, notices, postcards, telegrams, deposition transcripts; contracts, agreements, leases; reports, studies, working papers; charts, proposals, graphs, sketches, diagrams; indices; maps; analyses, statistical records, reports, results of investigations, reviews; ledgers, journals, balance sheets, accounts, books of accounts, invoices, vouchers, purchase orders, receipts, expense accounts, canceled checks, bank checks, statements; sound and tape recordings, videotapes, audiotapes, memoranda (including any tape recordings, audiotapes; memoranda (including any type or form of notes, memoranda or sound records of personal thoughts, recollections or reminders, or of

telephone or other conversations, or of acts, activities, agreements, meetings, or conferences); photostats, microfilm; instruction lists or forms; computer printouts or other computer instruction lists or forms; computer printouts of other computer data; minutes of director or committee meetings, interoffice or intraoffice communications, diaries, calendar or desk pads, stenographers' notebooks, appointment books; and other papers or matters similar to any of the foregoing, however denominated, whether received by you or prepared by you for your own use or transmittal. If a document has been prepared in several copies, or additional copies have been made, and the copies are not identical (or which, by reason of subsequent modification or notation, are no longer identical), each non-identical copy is a separate "document."

(2)    The term "you" shall mean the Defendant Donald Lewis Sherwood, and where applicable shall include not only the individual Defendant, but any business entity, corporation, sole proprietorship, and/or any other similar entity in which Defendant has a financial and/or ownership interest.

(3)    Unless otherwise indicated, these requests pertain to the intimate relationship between Defendant Don Sherwood and Plaintiff Cynthia Mirella Ore during the time period from September 1999 through September 2004 [hereinafter "the relevant time period"], including but not excluding, the specific nature of the relationship and any unconsented physical contact of Plaintiff's person conducted and/or made by Defendant.

## DOCUMENTS TO BE PRODUCED

1.    Any and all documents which pertain in any manner to the purchase and/or lease of the property located at 110 D Street, SE, Apartment 215, Washington, DC during the relevant time period. In the event that the property in question was leased and/or purchased prior to the beginning of the relevant time period, the request includes any documents pertaining to the purchase and/or lease of this property at any time.

2.    All photographs, videotapes, audiotapes, digital images, and/or any other similar images which are in the possession or control of the Defendant and which contain any image of the Plaintiff.

3.    All financial disclosure forms filed by the Defendant for all periods beginning January 1, 1999 through the present. This request pertains to any financial disclosure forms which the Defendant was required to file in connection with his position as a United States Congressman.

4.    Any and all receipts, invoices, canceled checks, credit card receipts and/or bills, and any other similar documents and materials which pertain to any meals and/or material goods which the Defendant purchased for, and/or which the Defendant presented to, the Plaintiff.

5.    Any and all statements which the Defendant gave to any police investigative agency, including but not limited to the District of Columbia Metropolitan Police Department, as well as the United States Capitol Police, which in any way pertain to the Plaintiff and/or the Defendant's relationship with the Plaintiff.

6.    Any and all documents which support any defense the Defendant has asserted to the claims and allegations as set forth in Plaintiff's lawsuit.

7.    Any and all documents in the possession or control of the Defendant which relate to any injuries and/or damages suffered by the Plaintiff which were allegedly caused by the Defendant.  This request includes but is not limited to hospital and medical records, police reports, photographs, videotapes, audiotapes, and any other similar materials of any nature which pertain in any manner to injuries or damages suffered by the Plaintiff.

8.    A complete copy of any and all documents relating in any way to psychiatric and/or psychological care or treatment you have received for the period 10 years prior to the events at issue to the present, including but not limited to psychological, psychiatric or psychotherapeutic notes, tests and/or evaluations, reports, correspondence or any other record.

9.    A complete copy of any and all documents relating in any way to care or treatment you have received for alcohol or substance abuse for the period 10 years prior to the events at issue to the present, including but not limited to all outpatient and inpatient records.

10.    Any and all statements or reports prepared by expert witnesses who you intend to call at trial.

11.    Any and all documents upon which this Defendant intends to rely if this Defendant contends that the circumstances and claims stated in the Complaint are in dispute, misrepresented and/or false.

12.    Any and all documents obtained by any subpoena issued in this litigation.

13.    Any and all documents in the possession or control of the Defendant which relate to any of the defenses asserted by this Defendant to the allegations set forth in Plaintiff's Complaint.

14.    Any and all bills pertaining to any credit cards utilized by the Defendant any time during the relevant time period.  This request includes cards that may have been issued in the name of the Defendant, as well as any cards that may have been issued in the name of other individuals or entities and which were utilized by the Defendant at any time during the relevant time period.

15.    Any and all bills or invoices pertaining to cellular phones used by the Defendant during the relevant time period.  This request includes cellular phones that may have been issued in the name of the Defendant, as well as any cellular phones thatmay have been issued in the name of other individuals or entities and which were utilized by the Defendant at any time during the relevant time period.

Respectfully submitted,

REGAN, HALPERIN & LONG, PLLC

By: _____

Patrick M. Regan        #336107
Jonathan E. Halperin    #435512
Paul Cornoni            #489398
1919 M Street, NW
Suite 350
Washington, DC 20036
PH: (202) 463-3030
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Plaintiff's First Request for Production of Documents to Defendant Donald Lewis Sherwood was served on the Defendant, via hand delivery to his counsel, Bobby R. Burchfield, Esquire, Meredith N. Caskey, on this day of September 6, 2005.

Patrick M. Regan

# Exhibit B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**CYNTHIA MIRELLA ORE**                    :

       **Plaintiff,**                    :

           **v.**                    :

**DONALD LEWIS SHERWOOD**                    :

       **Defendant.**                    :

**Civil Action No. 05-1434**

**Judge Paul L. Friedman**

### PLAINTIFF'S FIRST SET OF INTERROGATORIES
### TO DEFENDANT DONALD LEWIS SHERWOOD

The Plaintiff, Cynthia Mirella Ore, by and through her undersigned counsel, Patrick M. Regan, Jonathan E. Halperin, Paul Cornoni and Regan, Halperin & Long, requests the above-named Defendant, pursuant to the rules of this court, to answer the following Interrogatories:

### INSTRUCTIONS FOR ANSWERING INTERROGATORIES

1.    The following interrogatories shall be deemed to be continuing, and any additional information, including any conclusions, opinions, or contentions that are different from those set forth in the present answers shall be furnished to the Plaintiff's attorney after such information is acquired.

2.    These Interrogatories seek all information known or available to you, regardless of whether the information is possessed directly by the Defendant, or by officers, directors, agents, servants, employees, representatives, affiliates, subsidiaries or predecessor companies.

3.    If any of these Interrogatories cannot be answered in full, it must be answered to the extent possible, specifying the reasons for your inability to answer the remainder and stating whatever information, knowledge, or belief you have with respect to the unanswered portion.

4.    Where the name or identity of a person is requested, state the full name, home and business address, home and business telephone number, occupation, and job title of that person, and state his or her present and former relationship to Defendant.

5.    Where the identity of a document is requested, state, if applicable, the title or caption of the document, the date the document was prepared, the name of the author or signor of the document, the name of the person to whom the document is addressed or to whom it was distributed, the name of the publisher of the document, and the name of the individual who presently has custody, possession, or control of the document.

6.    If the answer to any of these Interrogatories is based upon information other than the personal knowledge of the individual signing these Interrogatories, then set forth in detail, the underlying basis for each answer and state when, where, from whom and under what circumstances the person answering these Interrogatories obtained the information for each answer.

7.    As used herein, the term "document" or "documents" means any written, recorded, or graphic matter, however produced or reproduced and whether or not now in existence, and includes the original, all file copies, all other copies no matter how prepared, and all drafts prepared in connection with such documents, whether used or not.

It further includes and is not limited to papers, books, records, catalogs, price lists, pamphlets, periodicals, letters, correspondence, scrapbooks, notebooks, bulletins, circulars, forms, notices, postcards, telegrams, deposition transcripts; contracts, agreements, leases; reports, studies, working papers; charts, proposals, graphs, sketches, diagrams; indices; maps; analyses, statistical records, reports, results of investigations, reviews; ledgers, journals, balance sheets, accounts, books of accounts, invoices, vouchers, purchase orders, receipts, expense accounts, canceled checks, bank checks, statements; sound and tape recordings, videotapes, audiotapes, memoranda (including any tape recordings, audiotapes; memoranda (including any type or form of notes, memoranda or sound records of personal thoughts, recollections or reminders, or of telephone or other conversations, or of acts, activities, agreements, meetings, or conferences); photostats, microfilm; instruction lists or forms; computer printouts or other computer instruction lists or forms; computer printouts of other computer data; minutes of director or committee meetings, interoffice or intraoffice communications, diaries, calendar or desk pads, stenographers' notebooks, appointment books; and other papers or matters similar to any of the foregoing, however denominated, whether received by you or prepared by you for your own use or transmittal. If a document has been prepared in several copies, or additional copies have been made, and the copies are not identical (or which, by reason of subsequent modification or notation, are no longer identical), each non-identical copy is a separate "document."

8.    The words "person(s)" and "entities" shall mean all individuals, groups and organizations, including, without limitation, all individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates and any agency of the government or investigative body of any kind.

9.    The word "or" shall mean "and/or".

10.    A document or communication "relating to" or "incident to" or "referring to" a given subject matter means any document or communication that constitutes, contains, embodies, comprises, reflects, identifies, states, refers to, deals with, comments on, respond to, describes, analyzes, or is in any way pertinent to that subject.

11.    The term "you" shall mean the defendant, including all its subsidiaries and affiliated entities and shall further include all officers, directors, employees, agents and representatives of such entities.

12.    Unless otherwise indicated, these interrogatories pertain to the intimate relationship between Defendant Don Sherwood and Plaintiff Cynthia Mirella Ore during the time period from September 1999 through September 2004 [hereinafter "the relevant time period"], including but not excluding, the specific nature of the relationship and any unconsented physical contact of Plaintiff's person conducted and/or made by Defendant.

## INTERROGATORIES

1.    Please state whether the Defendant had an intimate, romantic, or sexual relationship with the Plaintiff at any time during the relevant time period. If the

Defendant had such a relationship, please include the dates and times for all romantic and/or sexual encounters, and include the location of each encounter.

2.     Please set forth in detail each and every occasion during the relevant time period when the Defendant was in the physical company of the Plaintiff and describe with specificity the purpose of each encounter, the location of each encounter, and the duration of each encounter. Please include in this response all vacations, trips, dinner engagements, movies, dates, and/or any other similar excursions which Defendant undertook with Plaintiff.

3.     During the relevant time period, please precisely describe any all gifts, including, but not limited to, jewelry, clothing, motor vehicles and/or other material goods of any nature, which Defendant purchased, provided and/or presented to Plaintiff.

4.     Please provide all details of any contact between the Defendant and the Plaintiff on June 23, 24 and/or 25, 2004.

5.     Please provide all details of any contact between the Defendant and the Plaintiff on September 14, 15 and/or 16, 2004.

6.     If this Defendant, or any representative of this Defendant, ever took or received any statement, either oral or written, from any person, including parties, who had information or knowledge relating to either the claims and/or allegations set forth in the Complaint, and/or any of the Defendant's defenses to the claims and/or allegations of this lawsuit, please identify all persons from whom a statement was received, and provide a summary of each such statement and identify the custodian of any written statements.

7.    Please state the name, address and title of any person, not heretofore mentioned, having personal knowledge of any facts material to either the claims and/or allegations set forth in the Complaint and/or any of the Defendant's defenses to the claims and/or allegations set forth in the lawsuit.

8.    If you know of the existence of any photographs, motion pictures, models, and/or other demonstrative evidence relating to the physical assaults underlining the complaint, or the circumstances outlined in the Complaint, please describe fully and identify the present custodian of each.

9.    Please identify all credit cards which were issued in the name of the Defendant, and/or which were used at any time by the Defendant, during the relevant time period.  Include in your response the identity and address of the bank and/or other entity issuing the card, the card number, the name on the card, and the expiration date.

10.    Please identify all cell phones utilized by the Defendant at any time during the relevant time period.  Please include in your response the phone company that sent the bill to you for each cellular phone, the phone number of each cellular phone, and the time period during which each cell phone was utilized by you for any purpose.

Respectfully submitted,

REGAN, HALPERIN & LONG, PLLC

By: _____

Patrick M. Regan        #336107
Jonathan E. Halperin    #435512
Paul Cornoni            #489398
1919 M Street, NW
Suite 350
Washington, DC 20036
PH: (202) 463-3030
*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Plaintiff's First Set of Interrogatories to Defendant Donald Lewis Sherwood was served on the Defendant, via hand delivery to his counsel, Bobby R. Burchfield, Esquire, Meredith N. Caskey, Esquire, this day of September 6, 2005.

Patrick M. Regan

# Exhibit C

**Metropolitan Police Department**                                    **Washington, D.C.**

PART I - CLASSIFICATION OF EVENT

**TYPE OF REPORT**
- ○ Offense
- ☑ Incident

**DATE AND TIME OF EVENT**

| | Start Date | | | Start Time | | End Date | | | End Time | |
|---|---|---|---|---|---|---|---|---|---|---|
| Month | Day | Year | Hour | Minute | Month | Day | Year | Hour | Minute |

Start: 1 5 0 4 13.00

**DATE OF REPORT**: 1 5 0 4   **TIME OF REPORT**: 1730   **DISTRICT**: 5   SECTOR: 0 7

BEAT: 105   **COMPLAINT NUMBER**: 28257

FILL IN THE OVALS COMPLETELY
Right Mark ☑
Wrong Marks ☒ ⊘

**EVENT LOCATION ADDRESS**
110 Dstrict SE #215

○ Rear of  ○ In front of  ○ Along side of  ☑ Inside of
○ NW Corner  ○ NE Corner  ○ SW Corner  ○ SE Corner

**10 REPORT RECEIVED BY**
○ TRU  ○ Walk-in  ☑ On-scene  ○ Radio run

**11 IS RADIO RUN LOCATION AND EVENT LOCATION THE SAME?**
○ Yes  ○ No

**12 PROPERTY TYPE**
○ Public  ○ Private

**EVENT NO. 1**
Domestic Incident

**EVENT NO. 2**

**EVENT NO. 3**

**17 FORCED ENTRY**
○ Yes  ○ No

**18 POINT OF ENTRY**

**a. Method Used**

**b. Tools Used**

**19 WEATHER CONDITIONS**
○ Clear  ○ Rain  ○ Other  ☑ Cloudy  ○ Snow  ○ Not applicable  ○ Unknown

**20 SUSPECTED HATE CRIME?**
○ Ethnic  ○ Sexual Orientation  ○ Religious  ○ Other

**21 SECURITY SYSTEM (Mark all that apply)**
○ Alarm/Audio  ○ Alarm/Silent  ○ Camera  ○ Dog  ○ Dead bolt  ○ Unlocked  ○ Exterior lights  ○ Interior lights  ○ Fence  ○ Guard  ○ Neighborhood watch  ○ Other  ☑ Not applicable  ○ Unknown

**22 LOCATION TYPE (Mark only one)**
○ Bus/Train terminal
○ Bank/Savings & loan
○ Bar/Nightclub
○ Church/Synagogue/Temple
○ College/University
○ Commercial office building
○ Construction site
○ Convenience store
○ Department/Discount store
○ Federal/Government building
○ Doctor's office/Hospital
○ Drug store
○ Federal/Government bldg.
○ Field/Woods
○ Grocery/Supermarket
○ Hotel/Motel/Etc.
○ Jail/Prison
○ Lake/Waterway
○ Liquor store
○ Park area
○ Parking lot/Parking garage
○ Public housing project
○ Public/Private school
○ Rental storage facility
☑ Residence/Home
○ Restaurant
○ Service station
○ Sidewalk
○ Specialty store
○ Street/Highway/Road
○ Tavern/Night club
○ Other
○ Not applicable
○ Unknown

**23 DESIGNATED AREAS (Mark all that apply)**
○ Victim's vehicle
○ Suspect's vehicle
○ Taxi-cab
○ Bus
○ Train/Metro/Amtrak/Etc.
○ Hallway
○ Elevator
○ Stairwell
○ Basement/Laundry room
☑ Apartment/Condo unit
○ Single family dwelling
○ Hotel/Motel room
○ College/University dorm
○ Classroom
○ Office room
○ Vacant building/room
○ Customer area
○ Storage area
○ In public housing
○ W/in 1 block of public housing
○ W/in 1,000 ft. of school
○ Other
○ Not applicable
○ Unknown

PART II - VICTIM INFORMATION

**24 NAME OF COMPLAINANT/VICTIM/MISSING PERSON NO. 1**
ORE, Cynthia

**25 RELATED TO EVENT NO(S)**

**TYPE**
☑ Individual  ○ Financial Inst.  ○ Religious org.  ○ Police officer
○ Business  ○ Government  ○ Society/Public  ○ Other

**28 DATE OF BIRTH**  ○ NA  **29 AGE RANGE**  **30 SEX**
Day / Year: 3 / 76
○ 0-1 yr.  ○ 2-12 yrs.  ○ 13-17 yrs.  ○ 18-65 yrs.  ○ Over 65
○ Male  ☑ Female  ○ Unknown

**HOME PHONE**: (301) 770-0858

**BUSINESS PHONE**: ( )

**32 RACE/ETHNICITY (Mark all that apply)**
○ American Indian/Alaskan Native  ○ Asian/Pacific Islander  ○ Black  ○ Chinese  ○ Latino/Hispanic  ○ Jamaican  ○ Japanese  ○ Korean  ○ Vietnamese  ☑ White  ○ Other  ○ Unknown/Refused

**ADDRESS**  ☑ DC Resident  ○ Non-DC Resident  ○ Unknown
2550 Augustine Way
Gaithersburg, MD. 20879

**BUSINESS ADDRESS/SCHOOL**
Unemployed / N/A

**OCCUPATION**
None

**IS EVENT RELATED TO OCCUPATION?**
○ Yes  ○ No  ○ Unknown

**ADDITIONAL MEANS TO CONTACT COMPLAINANT/VICTIM NO. 1**
None

**37 NAME OF COMPLAINANT/VICTIM/MISSING PERSON NO. 1**
SHerwood, Don

**38 RELATED TO EVENT NO(S)**

**VICTIM TYPE**
☑ Individual  ○ Financial Inst.  ○ Religious org.  ○ Police officer
○ Business  ○ Government  ○ Society/Public  ○ Other

**41 DATE OF BIRTH**  ○ Unknown  ○ NA  **42 AGE RANGE**  **43 SEX**
Year: 41
○ 0-1 yr.  ○ 2-12 yrs.  ○ 13-17 yrs.  ○ 18-65 yrs.  ○ Over 65
☑ Male  ○ Female  ○ Unknown

**HOME PHONE**: ( ) N/A

**BUSINESS PHONE**: (202) 225-2784

**46 RACE/ETHNICITY (Mark all that apply)**
○ American Indian/Alaskan Native  ○ Asian/Pacific Islander  ○ Black  ○ Chinese  ○ Latino/Hispanic  ○ Jamaican  ○ Japanese  ○ Korean  ○ Vietnamese  ☑ White  ○ Other  ○ Unknown/Refused

**47 HOME ADDRESS**  ☑ DC Resident  ○ Non-DC Resident  ○ Unknown
110 Dst SE #215

**48 BUSINESS ADDRESS/SCHOOL**
N/A

**OCCUPATION**
Gov't employee

**IS EVENT RELATED TO OCCUPATION?**
○ Yes  ☑ No  ○ Unknown

**ADDITIONAL MEANS TO CONTACT COMPLAINANT/VICTIM NO. 1**
None

○ Open  ○ Closed  ○ Closed by arrest  **52 REVIEWER**

**TABLE 3: MISSING PERSONS**

| 65. PROBABLE CAUSE OF ABSENCE AND DESTINATION | | | | 66. COMPLAINT NUMBER |
|---|---|---|---|---|
| | | | | 1120 25 |

| 66. IF MISSING PERSON HAS RUN AWAY BEFORE, GIVE DATE AND WHERE LOCATED: | 67. CLASSIFICATION ○ Critical ○ Non-critical | 68. CLASSIFIED BY: | |
|---|---|---|---|

| 69. PHYSICAL/MENTAL CONDITION (i.e., diabetic) | 70. DESCRIBE ARTICLES OF JEWELRY WORN AND IDENTIFICATION CARRIED | 71. NAME OF PARENT/GUARDIAN |
|---|---|---|

| 72. ADDRESS OF PARENT/GUARDIAN | 73. IF JUVENILE, ENTER MOTHER'S MAIDEN NAME | 74. MISSING PERSON SECTION NOTIFIED (Name) |
|---|---|---|

**NARRATIVE**   Describe event and action taken. If additional narrative space is needed, use PD Form 251-A.

Item Number Continued

C-1 STATES; C-2 WAS giving Her a Back rub, When C-2 Began to choke Her for No apparent reason. C-1 then got up and locked Herself in the Bathroom where She Called 911 on Her Cellphone.

When MPD units arrived on the Scene C-1 was asked if She needed medical attention, She Declined. C-1 was then asked if She Had any Injuries or marks on Her Neck, She Stated She was Not injured and their were no visible marks or redness on Her Neck or facial area.

During the interview C-1 was asked about the incident, at which time She Changed the Subject several times and Stating nothing Happened, "We were Just sitting in the Living room Sipping tea."
C-1 Did not Seem to Be of Sound mind, When asked What time the incident Happened, She replied She Has no Idea. C-1 Has no recollection of what time of Day it was.

C-2 Stated He was giving C-1 a Back rub when She Jumped up and ran into the Bathroom.
C-2 States he Did not Choke or Assault C-1 in any way.
Both Parties Have Left out Significant Information or are not

| 75. EVIDENCE TECHNICIAN/CSES # | 76. NAME OF INVESTIGATOR NOTIFIED | 77. TELETYPE NOTIFIED (Name) | | 78. TELETYPE # |
|---|---|---|---|---|

| REPORTING OFFICER'S SIGNATURE | ELEMENT 1D | 81. OTHER POLICE AGENCY (Indicate if report prepared by officer other than MPD) ○ USCP ○ USSS ○ METRO TRANSIT ○ OTHER | SECOND OFFICER'S NAME | ELEMENT | 83. SIGNATURE OF SUPERVISOR | ELEMENT 1D |
|---|---|---|---|---|---|---|
| | 1-D | | | | | 1D |
| BADGE NUMBER | | | BADGE NUMBER | | BADGE NUMBER | |
| DeCiutiis, Nicholas | | | | | | |

| PD 251-A 2/86 | | Metropolitan Police Department | **CONTINUATION REPORT** | Washington, D.C. | |
|---|---|---|---|---|---|

| TYPE OF REPORT | | 1. DISTRICT | 2. BEAT | 3. RA | 4. ORIGINAL CLASSIFICATION | 5. COMPLAINT NUMBER |
|---|---|---|---|---|---|---|
| ☐ Offense | PD 262 ☐ Classification Change | 1D | 105 | | Incident (Domestic) | 128257 |
| ☐ Incident | ☐ Additional Information | | | | | |

For use in conjunction with PD Forms 251 and 262. Continue the narrative by referring to the specific item numbers being continued. If more space is needed, use additional continuation sheets. Indicate the page number at the bottom of each sheet.

Willing to Discuss in Detail what actually Happened. Based on interviews with Both Parties and no Physical evidence of Injury to C-1 their was no Probable Cause to make an arrest or reasonable Cause to Believe C-1 was assaulted By C-2.

# Exhibit D

Copyright 2005 Roll Call, Inc.
Roll Call

September 15, 2005 Thursday

**SECTION:** HEARD ON THE HILL

**LENGTH:** 874 words

**BYLINE:** By Mary Ann Akers ROLL CALL STAFF

**BODY:**

Random Acts of Love. The Senate Judiciary Committee hearing room was full of love, and some more bizarre emotions, during Wednesday's session of the John Roberts confirmation hearings.

The first awkward moment came when a drunk man wearing a suit was asked to leave the hearing room just as he was about to pass out in his chair. At least he was a happy drunk. As he stumbled out, he pointed at various lucky people in the audience, slurring, "I love you. ... I love you. ... And I love you."

One witness said the man was "nodding off and it looked like he might get sick." That's when Capitol Police politely asked him to hightail it out of the room, and perhaps out of the building. Capitol Police say he was not escorted out, and was not arrested.

"Nothing like a little eye opener in the morning," one witness told HOH. Another witness noted, "A drunk guy in a suit got hauled away - and it wasn't a Senator!"

More entertainment came when Sen. Charles Schumer (D-N.Y.) badgered Roberts to provide more detailed answers to the committee members' probing questions. Schumer said it was like asking someone what movies they like and getting vague answers about liking movies with good acting, good directing and good writing, but not really saying which ones are their favorites.

At that point, Chairman Arlen Specter (R-Pa.) declared that Schumer's time was up and cut him off. But Roberts asked if he could go ahead and answer the question anyway. "First of all," he intoned, "Dr. Zhivago ... ."

Then there was the moment Sen. Sam Brownback (R-Kansas) dragged Jimmy, the Senate elevator operator, who has Down Syndrome, into the abortion debate.

"He frequently gives me a hug in the elevator," Brownback said. "We're ennobled by him and what he does and how he lifts up our humanity. And 80 to 90 percent of the kids in this country like Jimmy never get here."

Roberts, perhaps a bit perplexed, had nothing to add.

Sherwood Alert. The attorney for Cynthia Ore, the former lover of Rep. Don Sherwood (R-Pa.) who has filed a $5.5 million assault-and-battery lawsuit against the married Congressman, wants to take Sherwood's sworn testimony.

"My goal is take Sherwood's deposition first," lawyer Patrick Regan told HOH this week.

Regan is out to prove that Sherwood received special treatment from Washington Metropolitan Police officers when they did not arrest Sherwood after Ore dialed 911 from his apartment to allege that he had choked her. "He was given preferential treatment because he's a Congressman, no question," Regan said.

The litigation has entered the discovery phase. Regan is seeking to take depositions from Sherwood, as well as from police officers involved in the case, including Metropolitan police officer Israel Ruiz, who told the Wilkes-Barre Times-Leader in Pennsylvania that he believes Sherwood should have been arrested. Ruiz says he took pictures of Ore's alleged injuries after the apartment incident.

Ruiz's superior, however, Commander Thomas McGuire, says Sherwood did not get preferential treatment and that Ruiz "was wrong to allege there was preferential treatment, because he wasn't on the scene," the paper reported.

Roll Call September 15, 2005 Thursday

With the threat of a sworn deposition looming over Sherwood in the federal case, settlement talks may not be far away. Paul Clarke, a consultant with the public relations firm Hill & Knowlton who is working for Sherwood, would not comment on whether Sherwood's attorney, Bobby Burchfield, is ready to propose a settlement, saying, "We certainly want to sit down and meet with the attorneys and discuss things."

The judge in the case has required that the two parties exchange preliminary disclosures later this month, Regan said. Those could include medical bills and pictures that may have been taken on the afternoon of the now-infamous 911 call.

Kids, Kids - Pipe Down! The spat between Reps. Tom Reynolds (R-N.Y.) and Rahm Emanuel (D-Ill.) is getting feistier by the minute.

Emanuel, chairman of the Democratic Congressional Campaign Committee, didn't much appreciate Reynolds, his rival at the National Republican Campaign Committee, calling him "Mr. Righteous" in a newspaper interview earlier this week. Emanuel shot back, suggesting that the upstate New Yorker was stressed out and should work out.

On Wednesday, it was Reynolds' turn. He was in the perfect position to do a little hit-and-run maneuver - literally - on Mr. Cocky from Chicago.

Reynolds was sitting in the back of his car when he spotted Emanuel sauntering down the street toward the Democratic Congressional Campaign Committee. He ordered his driver to step on it, so they could have a little fun scaring Rahmbo right out of his tutu. Then Reynolds rolled down the window and shouted, "What do you mean I have a lot of stress? What do you think, I'm fat?"

"I'm just saying the redness in your face shows you have high blood pressure," a cool-as-a-cucumber Emanuel shot back. "And from what I'm hearing from Mrs. Reynolds, she thinks I'm right!"

HOH called the NRCC for comment, but aides didn't want to stress Reynolds out. Stay tuned, though: HOH is giving Mr. 160-Over-100 the last word next time.

Please send your hot tips, juicy gossip or comments to hoh@rollcall.com.

**LOAD-DATE:** September 15, 2005