# Exhibit Q

# The Taking and Use of Video Depositions: An Update

## Michael J. Henke and Craig D. Margolis[*]

### Table of Contents

I.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   Pre-1993 Rules and Practice . . . . . . . . . . . . . . . . . . . 3
III.   Taking and Using Video Depositions Under the
New Federal Rules . . . . . . . . . . . . . . . . . . . . . . . . 6
    A.   *Rule 30(b)* . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    B.   *Procedures for Taking Video Depositions* . . . . . . . . 10
    C.   *Use at Trial* . . . . . . . . . . . . . . . . . . . . . . . . . 13
IV.   Miscellaneous Practice Issues . . . . . . . . . . . . . . . . . 18
    A.   *Choosing the Video Deposition* . . . . . . . . . . . . . . 19
    B.   *Abuse of the Video Deposition* . . . . . . . . . . . . . . . 21
    C.   *Video Depositions and State Practice* . . . . . . . . . . 22
    D.   *The Video Trial* . . . . . . . . . . . . . . . . . . . . . . . 23
V.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

   * Mr. Henke is a Senior Litigation Partner with Vinson & Elkins, L.L.P., Washington, D.C.; B.A. 1962, L.L.B. 1966, Baylor University; L.L.M. 1966 New York University.
   Mr. Margolis is a Litigation Associate with Vinson & Elkins, L.L.P., Washington, D.C.; A.B. 1991, University of Michigan; J.D. 1995, Yale Law School.

1

## I.  Introduction

When the primary author first addressed the subject in 1992,[1] video depositions were fast growing in popularity among practitioners and gaining greater acceptance by courts as a superior means of preserving live testimony for use at trial.  In recognition of this trend, sweeping reforms in discovery practice occasioned by the 1993 amendments to the Federal Rules of Civil Procedure dramatically liberalized the rules governing the taking of video depositions.[2] Where once video depositions were permitted in federal litigation only by stipulation or court order, new Rule 30(b)(2) grants the party noticing a deposition the right unilaterally to select the method by which the deposition will be recorded.[3]  As a result, the incidence of video depositions is sure to increase, both as a discovery tool and as a means of presenting evidence at trial.  Indeed, one may speculate that at some point in the near future video depositions will become the rule rather than the exception.  This Article will discuss in some depth the practice issues regarding the taking and use of video depositions, with a particular focus on the changes made by the 1993 amendments to the Federal Rules of Civil Procedure.

---

1.  Michael J. Henke, *The Taking and Use of Videotaped Depositions*, 16 AM. J. TRIAL ADVOC. 151 (1992) [hereinafter Henke, *Videotaped Depositions*]; *see also* Michael J. Henke, Video and Computers: Hi-Tech in the Courtroom (Oct. 20, 1993) [hereinafter Henke, Video and Computers] (unpublished paper prepared for and delivered at ABA Section of Litigation, 18th Annual Fall Meeting, 1993).

2.  On December 1, 1993, amendments to Federal Rules of Civil Procedure 1, 4, 5, 11, 12, 15, 16, 26, 28-34, 36-38, 50, 52-54, 58, 71A, and 72-76 went into effect after they were transmitted to Congress by the Supreme Court.  *See* Amendments to the Federal Rules of Civil Procedure and Forms, 146 F.R.D. 401, 404 (1993). Commentators uniformly consider the 1993 Amendments, particularly those changes pertaining to discovery practice, to be among the most significant reforms since the Rules first were promulgated.  *See, e.g.*, ROGER S. HAYDOCK & DAVID F. HERR, DISCOVERY PRACTICE § 1.1, at 1:5-1:6 (3d ed. 1996); Carl Tobias, *Congress and the 1993 Civil Rules Proposals*, 148 F.R.D. 383, 383 (1993); 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2003.1, at 57-58 (2d ed. 1994).

3.  FED. R. CIV. P. 30(b)(2).

## II.  Pre-1993 Rules and Practice

In order to lay the groundwork for the discussion of video depositions after the 1993 amendments, a brief discussion of pre-amendment practice is in order.  Until 1970, the Rules provided exclusively for stenographic depositions.[4]  The Advisory Committee circulated an amendment in 1967 that would have permitted the party noticing the deposition to designate the means of recording, either stenographic or non-stenographic.[5]  Deemed too controversial, this amendment was modified and adopted in 1970 to permit depositions to be taken "by other than stenographic means" upon motion and court order.[6]  Although one court of appeals held that a judge could not deny a request for a video deposition unless convinced "that the particulars of the request [did] not reasonably ensure accuracy equivalent to stenographic depositions,"[7] the majority view was that judges enjoyed the same discretion in deciding whether to permit

---

4.  *See id.* 30(c) (1963) ("The testimony shall be taken stenographically and transcribed unless the parties agree otherwise.").  Courts interpreted this Rule strictly to prohibit recording a deposition either by audio tape recorder or by videotape.  *See* United States Steel Corp. v. United States, 43 F.R.D. 447, 450-51 (S.D.N.Y. 1968) (prohibiting videotaping of deposition even where deposition also recorded stenographically); Galley v. Pennsylvania R.R. Co., 30 F.R.D. 556, 557 (S.D.N.Y. 1962) (prohibiting audio recording of deposition).

5.  Preliminary Draft of Proposed Amendments to Rules of Civil Procedure for the U.S. District Courts, 43 F.R.D. 211, 239-40 (1967) (proposing amendments to FED. R. CIV. P. 30(b)(4)).

6.  FED. R. CIV. P. 30(b)(4) (1970) provided: "The court may upon motion order that the testimony at a deposition be recorded by other than stenographic means, in which event the order shall designate the manner of recording . . . and may include other provisions to assure that the recorded testimony will be accurate and trustworthy."  The Advisory Committee justified the necessity of court approval by citing perceived problems with "accuracy and trustworthiness" that would result from non-stenographic recording.  Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 514 (1970).  Accordingly, an order providing for non-stenographic recording was to "specify how the testimony is to be recorded, preserved, and filed, and it may contain whatever additional safeguards the court deems necessary."  *Id.*

7.  Colonial Times, Inc. v. Gasch, 509 F.2d 517, 522 (D.C. Cir. 1975).

video depositions as they did in other routine discovery matters.[8]  The primary factor considered by courts in deciding whether to grant Rule 30(b)(4) motions was whether use of video would be cost-effective relative to other recording methods.[9]

Over time, the concept of video depositions became increasingly familiar, leading the Advisory Committee to circulate a second proposal in 1978 to amend Rule 30(b)(4) to permit unilateral noticing of video depositions.[10]  The drafters of that amendment believed that "given the reliability of modern electronic recording, the parties will normally agree to that method" and that "[t]he only objection available is to the accuracy of the electronic recording method to be employed."[11]  As was the case a decade earlier, the Advisory Committee was somewhat ahead of its time.  Controversy surrounding the amendment required retreat to a more modest proposal permitting non-stenographic depositions either by stipulation or court order.[12]  Rule 30(b)(4) was so amended in 1980.[13]

---

8.  *See In re* Sessions, 672 F.2d 564, 567 (5th Cir. 1982) (holding district courts not "bereft of discretion" in deciding whether to permit non-stenographic recording of depositions); UAW v. National Caucus of Labor Comms., 525 F.2d 323, 326 (2d Cir. 1975) (rejecting *Colonial Times* approach); Roberts v. Homelite Div. of Textron, Inc., 109 F.R.D. 664, 666-67 & n.1 (N.D. Ind. 1986) (following *National Caucus of Labor Comms*); Barham v. IDM Corp., 78 F.R.D. 340, 341 (N.D. Ohio 1978) (rejecting *Colonial Times*).

9.  *See* Perry v. Mohawk Rubber Co., 63 F.R.D. 603, 607 (D.S.C. 1974) (requiring movant to show that taking video deposition would reduce costs over other available methods of recording), *aff'd*, 529 F.2d 516 (4th Cir. 1976); Henke, *Videotaped Depositions, supra* note 1, at 155 (stating that courts applying the 1970 version of Rule 30(b)(4) "seized upon the language in the advisory committee notes concerning the facilitation of less expensive procedures."); 8A WRIGHT ET AL., *supra* note 2, § 2115, at 107 n.15 (discussing the fact that "[t]he intial attraction of electronic recording of depositions was to save money," and citing cases where other courts echoed this concern).

10.  Preliminary Draft of Proposed Amendments to the Federal Rules of Civil Procedure, 77 F.R.D. 613, 631-32 (1978) (citing proposed amendment to FED. R. CIV. P. 30(b)(4)).

11.  *Id.* at 639-40 (Advisory Committee's note).

12.  Amendments to the Federal Rules of Civil Procedure, 85 F.R.D. 521, 528 (1980).  The Advisory Committee's note indicates that the reason for the retreat was simply that "[t]he Committee [was] not satisfied that a case [had] been made for a reversal of present practice." *Id.* at 529.  However, Walter Mansfield, Chairman of the Advisory Committee on Civil Rules, explicitly indicated that there was substantial resistance to the proposed amendment based on (1) the cost of videotaping versus stenographic recording, (2) the dubious fidelity of videotaping, (3) the difficulty posed

The Advisory Committee indicated in 1980 that the purpose of the Rule 30 amendment was "to encourage parties to agree to the use of electronic recording of depositions so that conflicting claims with respect to the potential of electronic recording for reducing costs of depositions can be appraised in the light of greater experience."[14] Despite the resistance to amending the Rules to permit video depositions as a matter of course, judges and parties on the whole were relatively liberal in the use of video depositions.[15] Courts and commentators extolled the virtues of the video deposition.[16] While some courts remained recalcitrant by refusing to order videotaped depositions or admit video testimony,[17] the debate gradually shifted from whether to allow video depositions to what safeguards were

---

by videotaping in ruling on objections, and (4) the suggestion that videotapes were susceptible to intentional or inadvertent alteration or erasure. Letter from Walter R. Mansfield, Chairman, Advisory Committee on Civil Rules to Judge Roszel C. Thomsen, Chairman of the Committee on Rules of Practice and Procedure, (June 14, 1979), *in* 85 F.R.D. 538, 543 (1980).

13. Amendments to the Federal Rules of Civil Procedure, 85 F.R.D. at 528.

14. *Id.* at 529 (Advisory Committee's note).

15. Henke, *Videotaped Depositions, supra* note 1, at 157; 8A WRIGHT ET AL., *supra* note 2, § 2115, at 107.

16. *See, e.g.*, Sandidge v. Salen Offshore Drilling Co., 764 F.2d 252, 259 n.6 (5th Cir. 1985) (enumerating advantages of video depositions for preserving testimony); Workman v. Chinchinian, 807 F. Supp. 634, 648 (E.D. Wash. 1992) ("Allowing parties to take videotaped depositions for use at trial would help to curb trial costs significantly and thereby reduce the tremendous financial strain so often suffered by litigants. . . . Indeed, the court looks forward to the day when most expert testimony will be conducted in this fashion."); Rice's Toyota World, Inc. v. Southeast Toyota Distribs., Inc., 114 F.R.D. 647, 649 (M.D.N.C. 1987) ("Video depositions can markedly increase accuracy and trustworthiness."); *see also* Rebecca White Berch, *A Proposal to Amend Rule 30(b) of the Federal Rules of Civil Procedure,* 59 FORDHAM L. REV. 347, 371-77 (1990) (discussing evidentiary advantages of videotaped depositions); Mark A. Neubauer, *Videotaping Depositions,* 19 LITIG. 60, 61-62 (Summer, 1993) (discussing strategic uses of video depositions); Alexander R. Sussman & Edna R. Sussman, *Electronic Depositions,* 15 LITIG. 26, 26-28 (Summer, 1989) (same). For a full discussion of the relative benefits and disadvantages of video depositions, see *infra* text accompanying notes 55-83.

17. *See, e.g.*, Bogan v. Northwestern Mut. Life Ins. Co., 145 F.R.D. 642, 642-43 (S.D.N.Y. 1993) (refusing to permit videotape depositions on motion of one party because of concerns about accuracy in contentious multiparty litigation); Windsor Shirt Co. v. New Jersey Nat'l Bank, 793 F. Supp. 589, 606-11 (E.D. Pa. 1992) (refusing to admit video deposition testimony at trial where trial court did not consider videotaped testimony to constitute an official "deposition," holding that use of videotapes at trial would have been more prejudicial than probative), *aff'd*, 989 F.2d 490 (3d Cir. 1993).

necessary and proper to ensure their accuracy, fairness, and cost-effectiveness.[18] Rule 30(b)(4) orders that granted permission to take video depositions generally provided the following procedures and safeguards:

1.  simultaneous recording of the deposition by traditional stenographic means;
2.  requiring the officer (*i.e.*, videographer) to take an oath accurately to record the proceeding;
3.  requiring continuous running of the camera throughout the deposition;
4.  establishing protocols for recording and ruling on objections; and
5.  providing for costs.[19]

As the taking and use of video depositions became increasingly commonplace, opposition began to wane. Eventually, the Advisory Committee thought it proper to try a third time to amend the Federal Rules to provide for videotaping of depositions as a matter of course. The third time was the charm, as evidenced by the widespread changes to Rule 30 included in the 1993 amendments and discussed in detail in the next section.

## III. Taking and Using Video Depositions Under the New Federal Rules

As suggested above, the amendments to the Federal Rules of Civil Procedure that took effect on December 1, 1993 made revolutionary changes in discovery practice, among which were changes to Rule 30 permitting either party unilaterally to notice a

---

18. *See* Henke, *Videotaped Depositions, supra* note 1, at 157-60 (listing safeguards).

19. *Id.* To review cases that include similar safeguards, see *Deem v. Lockheed Corp.*, 11 Fed. R. Serv. 3d (Callaghan) 302, 304-06 (S.D.N.Y. 1988); *Rice's Toyota World*, 114 F.R.D. at 651-52; Roberts v. Homelite Div. of Textron, Inc., 109 F.R.D. 664, 668-69 (N.D. Ind. 1986); *ETSI Pipeline Project v. Burlington Northern, Inc.*, B-84-979-CA (E.D. Tex. Mar. 16, 1988 & Jan. 23, 1985) (pre-trial orders), *reprinted in* Henke, *Videotaped Depositions, supra* note 1, at 167-73; and *Farahmand v. Local Properties, Inc.*, 88 F.R.D. 80, 84-85 (N.D. Ga. 1980).

video deposition, without stipulation or court approval.[20]  As before, the Advisory Committee encountered some resistance when it first circulated a proposed draft of the Rule in August 1991.[21]  Video depositions, however, had entered the mainstream.  The Advisory Committee unanimously voted to adopt the change, which was transmitted by the Supreme Court and shepherded through Congress without significant opposition.[22]  With the imprimatur of the Federal Rules, therefore, practitioners may expect that video depositions will become a commonplace discovery tool.  A working familiarity with new Rule 30, as well as the changes to Rules 26 and 32 regarding video depositions, is thus essential.  This Section will examine these Rules and describe the new procedures for the taking of video depositions and their use at trial.

---

20.  Amendments to the Federal Rules of Civil Procedure, 146 F.R.D. 401, 403-04 (1993) (transmittal letter of Chief Justice Rehnquist to Congress); *id.* at 450-51 (Rule 30(b)(2)).

21.  *See* Letter from Sam C. Pointer, Jr., Chairman, Advisory Committee on Civil Rules, to Robert E. Keeton, Chairman, Standing Committee on Rules of Practice and Procedure, attachment B, at 9 (May 1, 1992), *in* 146 F.R.D. 519, 529 (1992).  With regard to the opposition to the amendment, Judge Pointer stated:

> None of the published amendments has received a larger number of objections than the proposal relieving parties from the necessity of obtaining court approval or agreement of other parties as a condition to taking depositions by non-stenographic means.  Many of these comments came from court reporters, but many members of the bar made similar comments.  This opposition urges that video and audio recordings are unreliable and difficult to use at trial.  The Advisory Committee is, however, unanimous that these concerns are adequately dealt with in the proposed amendments . . . .

*Id.*

22.  As a result of lobbying by court reporters, legislation was introduced in Congress to amend the first sentence of Rule 30 to read: "Unless the court upon motion orders, or the parties agree in writing to use, sound or sound-and-visual means, the deposition shall be recorded by stenographic means."  H.R. 2814, 103d Cong. (1993).  The bill passed the House of Representatives by a procedure reserved for uncontroversial legislation (suspension of the rules) but never was taken up in the Senate.  139 CONG. REC. H8744-47 (daily ed. Nov. 3, 1993) (referencing passage of H.R. 2814); *see also* 8A WRIGHT ET AL., *supra* note 2, § 2115, at 116 n.38 (describing bill's legislative history).

8          *THE REVIEW OF LITIGATION*          [Vol. 17:1

## A. Rule 30(b)

The changes permitting video depositions as a matter of course are found in Rule 30(b), which provides in pertinent part:

> The party taking the deposition shall state in the notice the method by which the testimony shall be recorded. Unless the court orders otherwise, it may be recorded by sound, sound-and-visual, or stenographic means, and the party taking the deposition shall bear the cost of the recording. Any party may arrange for a transcription to be made from the recording of a deposition taken by nonstenographic means.[23]

The Rule further provides that "[w]ith prior notice to the deponent and other parties, any party may designate another method to record the deponent's testimony in addition to the method specified by the person taking the deposition. The additional record or transcript shall be made at that party's expense unless the court otherwise orders."[24]

As the Advisory Committee note indicates, the Rule "confers on the party taking the deposition the choice of the method of recording, without the need to obtain prior court approval for one taken other than stenographically."[25]    These provisions put video and stenographic recording on an equal footing. No provision requires a party to record a deposition both video-graphically and stenographically. In practice, however, parties likely will opt to record by both methods simultaneously for three reasons. First, the parties may want a backup means of recording should the video equipment malfunction. Second, a written transcript provides a convenient means of editing the videotaped deposition. Third, Rules 26 and 32 require a party that intends to present video deposition testimony at trial, or to use such testimony in a dispositive motion, to provide its opponent and the court with stenographic transcriptions of the relevant portions.[26]

---

23. FED. R. CIV. P. 30(b)(2).
24. *Id.* 30(b)(3).
25. *Id.* 30(b)(2) Advisory Committee's note.
26. *See id.* 26(a)(3) (requiring pretrial designation of witnesses whose testimony will be presented by deposition, and, if taken non-stenographically, provision of transcript of pertinent portions of deposition testimony); *id.* 32(c) (requiring party that offers non-stenographic deposition testimony in court to provide court with transcript of portions offered).

It is immediately apparent that the recent amendments render moot much of the pre-1993 case law discussing whether, and under what conditions, courts should permit video depositions to be taken. Although the revised Rules authorize courts to restrict the means of recording a deposition, they contemplate that video recording shall be presumptively available.[27]  Indeed, in *Riley v. Murdock*,[28] the court held that amended "Rule 30(b)(2) specifically permits the deposing party to select the method of recordation of the deposition," and rejected a party's objection to switching the means of recording a deposition in mid-course from stenography to video.[29]  Similarly, in *Gillen v. Nissan Motor Corp. in U.S.A.*,[30] the court simply held that "Rule 30(b)(2) . . . allows the videotaping of depositions . . . . Rule 30(b)(2), therefore, contemplates that a deposition may be taken by various means as a routine practice."[31]  These holdings suggest that Rule 30(b) provides parties with the option of taking a video deposition as a matter of right, unless an opposing party can show good cause.

To the extent that Rule 30(b)(2) limits a court's discretion to refuse to permit a video deposition, the Rule may resuscitate the much-maligned decision of the D.C. Circuit in *Colonial Times, Inc. v. Gasch*, which limited the scope of a trial judge's discretion to restrict video recording "to those actions necessary to promote accuracy and trustworthiness."[32]  Thus, where challenges are anticipated to a noticed video deposition, a party may want to stipulate to an order containing many of the "accuracy and trustworthiness" safeguards that were incorporated into former Rule 30(b)(4) orders and discussed in the previous section.[33]  It is difficult to speculate whether other courts will follow *Riley* and *Gillen* in

---

27. *See id.* 30(b)(2) (stating that "[u]nless the court orders otherwise, [the deposition] may be recorded by sound, sound-and-visual, or stenographic means").

28. 156 F.R.D. 130 (E.D.N.C. 1994).

29. *Id.* at 130-31.

30. 156 F.R.D. 120 (E.D. Pa. 1994).

31. *Id.* at 122 (granting defendant's motion to compel video deposition).

32. Colonial Times, Inc. v. Gasch, 509 F.2d 517, 522 (D.C. Cir. 1975); *see also* discussion of conflicting case law on issue, *supra* notes 8-9, 17 and accompanying text.

33. *See also supra* text accompanying notes 18-19 and cases cited in note 19. In *Gillen*, the court noted the availability of such safeguards in allowing the motion to compel and included a terse order incorporating some of these safeguards. 156 F.R.D. at 123.

*THE REVIEW OF LITIGATION*

broadly interpreting the new Rule. Given the greater receptivity to video deposition testimony in recent judicial opinions, it is likely that many courts will view the new Rule as a salutary development and will seek fully to effectuate its purposes.[34]


### B. *Procedures for Taking Video Depositions*

As already stated, a party may choose to take a video deposition simply by designating that method of recording in the deposition notice.[35] Any party may request that a transcription be made of a video deposition, and after notifying the deponent and the other parties, a party may designate an alternate method of recording at his or her own expense.[36] Importantly, this latter provision would permit any party to make a video recording of the deposition, regardless of the manner in which it originally was noticed. Thus, a party defending a stenographic deposition could choose to have the deposition also recorded by video.[37]

Unless otherwise stipulated, the deposition is to be conducted before an "officer" designated under Rule 28,[38] who must state his or her name and business address; the date, time, and place of the deposition; and the name of the deponent at the beginning of each "unit of recorded tape or other recording medium."[39] Presumably, the officer will be the videographer recording the deposition, although the Rule does not explicitly so state. The only instruction provided

---

34. *See* Ott v. Stipe Law Firm, 169 F.R.D. 380, 381 (E.D. Okla. 1996) ("Courts have generally given Rule 30 a liberal interpretation designed to promote, rather than hinder, the practice of recording discovery proceedings through . . . non-stenographic means."); *Gillen*, 156 F.R.D. at 122 ("Courts have encouraged liberal interpretation of rules authorizing nonstenographic recording of discovery proceedings, and have followed a policy of promoting rather than blocking the practice.").

35. FED. R. CIV. P. 30(b)(2).

36. *Id.* 30(b)(2)-(3).

37. One reason for doing so would be to capture the demeanor or attitude of the attorney who noticed the deposition as he or she questions the witness whom you are defending. *See* discussion of advantages of video recording, *infra* notes 56-57 and accompanying text.

38. FED. R. CIV. P. 28(a) (providing that depositions be taken before person authorized to administer oaths under U.S. laws).

39. *Id.* 30(b)(4).

*VIDEO DEPOSITIONS*

on the manner of taping is that "[t]he appearance or demeanor of deponents or attorneys shall not be distorted through camera or sound-recording techniques."[40]   It remains to be seen whether this requirement will be satisfied only by continuous running of the camera throughout the deposition, and whether special lighting, lenses, camera angles, or other production techniques will be permitted.[41]

As an initial matter, the party noticing the video deposition must bear the costs of the recording.[42]  A party that designates an additional method for recording the deposition must pay those costs.[43]  Both requirements may be modified by court order.[44]  The Rule is silent on the question of who must pay for transcription of the video.  Since Rules 26 and 32 both require that a transcript be made if videotape deposition testimony is to be offered at trial or used in conjunction with a dispositive motion,[45] preparing a transcript should be considered part of the cost of making a video deposition, and that cost should be borne by the party who chose to record by video.[46]

One interesting issue that has generated significant discussion in the case law, and a split in the circuits, is whether the costs of a video deposition and the attendant costs of preparing a transcript are taxable.  Rule 54 provides that costs should be allowed "as of course" to the prevailing party except when a statute provides otherwise.[47]  In turn, by statute, "[f]ees of the court reporter for all or any part of the

---

40. *Id.*

41. For pre-amendment case law prohibiting the use of special camera techniques, see *Deem v. Lockheed Corp.,* 11 Fed. R. Serv. 3d 302, 304-305 (requiring continuous running of camera, unless stopped by stipulation, and plain, dark background with no supplemental lighting); *Rice's Toyota World, Inc. v. Southeast Toyota Distrib., Inc.,* 114 F.R.D. 647, 652 (M.D.N.C. 1987) (requiring use of single camera continuously running and no unusual lighting for benefit of camera); In re *Daniels,* 69 F.R.D. 579, 582 (N.D. Ga. 1975) (prohibiting use of zoom lens).  The continuing validity of these pre-amendment cases has not yet been tested under the new rule.

42. FED. R. CIV. P. 30(b)(2).

43. *Id.* 30(b)(3).

44. *Id.* 30(b)(2)-(3).

45. *Id.* 26(a)(3)(B) & 32(c).

46. *Cf.* Garonzik v. Whitman Diner, 910 F. Supp. 167, 170, 172 (D.N.J. 1995) ("[U]nder the revised rules, it is clear that a transcript of a videotape deposition is not for the 'convenience of counsel,' but rather is an express obligation.") (holding that costs of taking deposition and of transcription are taxable by prevailing party).

47. FED. R. CIV. P. 54(d)(1).

stenographic transcript necessarily obtained for use in the case" are taxable costs.[48]

Because the statute provides explicitly for recovery of stenographic transcription fees, and the Supreme Court has held that the statute should be strictly construed with respect to another provision,[49] courts have taken three conflicting approaches to awarding video deposition costs. In the first category are courts that have held the "plain text" of section 1920 precludes taxing video deposition costs.[50] Under the second approach, courts will award either the costs of a video deposition or the cost of stenographic transcription, but not both.[51] These courts proceed on the theory that, once a party opts to record a deposition by video, an additional stenographic recording or transcription is obtained solely for the "convenience of counsel" and thus is not "necessarily obtained for use in the case."[52] The third approach is that both video deposition and stenographic transcription costs are taxable, because Rules 26 and 32 require that transcripts be made of portions to be used at trial or

---

48. 28 U.S.C. § 1920(2) (1996).

49. *Cf.* Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 440-42 (1987) (holding that taxation of expert witness fees is strictly limited to that provided in 28 U.S.C. §§ 1821(a)-(b) & 1920).

50. *See* Coats v. Penrod Drilling Corp., 5 F.3d 877, 891 (5th Cir. 1993) (holding that video deposition costs are not included in section 1920 and therefore are not recoverable), *cert. denied,* 510 U.S. 1195 (1994); Echostar Satellite Corp. v. Advanced Communications Corp., 902 F. Supp. 213, 214-16 (D. Colo. 1995) (holding that section 1920 provides solely for costs of stenographic depositions; issue of whether video depositions should be taxable expense is left to Congress).

51. *See* Barber v. Ruth, 7 F.3d 636, 644-45 (7th Cir. 1993) (holding that trial court abused its discretion by awarding costs both for video deposition and stenographic transcription); Commercial Credit Equip. Corp. v. Stamps, 920 F.2d 1361, 1368 (7th Cir. 1990) (holding that it is proper to tax costs of videotaping depositions, but not necessarily proper to tax costs of transcribing videotaped depositions); Fitchett v. Stroehmann Bakeries, Inc., No. 95-284, 1996 WL 47977, at *6-7 (E.D. Pa. Feb. 5, 1996) (permitting taxation of costs either for video deposition or for transcription, but not both, because party may choose by which method to proceed and should bear costs of decision); Macario v. Pratt & Whitney Canada, Inc., No. 90-3906, 1995 WL 649160, at *2-3 (E.D. Pa. Nov. 1, 1995) (taxing costs of videotaping deposition but not of obtaining transcript).

52. *See Barber,* 7 F.3d at 645; *Fitchett,* 1996 WL 47977, at *6-7.

for dispositive motions.[53]    This last approach seems the most reasonable since video depositions may be utilized in later stages of the litigation only if a transcript is available, and after the 1993 amendments, there is no reason to treat costs attendant to the production and use of video depositions differently from other taxable litigation costs.

## C.  Use at Trial

Rule 32 governs the use of video deposition testimony at trial or other court proceedings.    Little was changed by the 1993 amendments, except for the addition of a new provision specifically addressing the presentation of video deposition testimony:

> Except as otherwise directed by the court, a party offering deposition testimony pursuant to this rule may offer it in stenographic or nonstenographic form, but, if in nonstenographic form, the party shall also provide the court with a transcript of the portions so offered.  On request of any party in a case tried before a jury, deposition testimony offered other than for impeachment purposes shall be presented in nonstenographic form, if available, unless the court for good cause orders otherwise.[54]

Note that this provision actually favors the presentation of video deposition testimony at trial over a traditional stenographic transcript. When a party attempts to present deposition testimony stenographically in a jury trial, the opposing party may object, provided that a video record is also available.  In these circumstances,

---

53.  *See* Morrison v. Reichhold Chems., Inc., 97 F.3d 460, 465 (11th Cir. 1996) (per curiam) (holding that when party notices deposition to be taken both stenographically and by video, and there is no contemporaneous objection, both costs are taxable); Garonzik v. Whitman Diner, 910 F. Supp. 167, 170-72 (D.N.J. 1995) (holding costs of video deposition and transcription taxable because transcripts are mandated by Rules); Freedman v. National R.R. Passenger Corp., No. 92-10836-WGY, 1994 WL 448631, at *1-2  (D. Mass. Aug. 19, 1994) (taxing both video deposition and transcription fees); Weseloh-Hurtig v. Hepker, 152 F.R.D. 198, 201 (D. Kan. 1993) (taxing both video and stenographic recording because party did not contemporaneously object to court order requiring both methods to be used); Meredith v. Schreiner Transp., Inc., 814 F. Supp. 1004, 1006 (D. Kan. 1993) (holding that because stenographic transcriptions generally required, "better practice is to allow the costs of both videotaped and stenographic depositions").

54.  FED. R. CIV. P. 32(c).

14            *THE REVIEW OF LITIGATION*            [Vol. 17:1

the opponent should argue that presentation of deposition testimony by video rather than by stenographic transcript is required.

This presumption in favor of presenting deposition testimony by video accords with numerous cases in which courts laud its advantages over a traditional transcript in affording the fact finder the opportunity to assess credibility. For example, in *Riley v. Murdock,*[55] the court described the video deposition in rather glowing terms:

> Stenographic transcripts record only spoken words. But people communicate in other ways in addition to the words used: facial expressions, voice inflection and intonation, gestures, "body language," and notes between counsel and deponent may all express a message to persons present at a deposition as to which a typed transcript is completely silent.
>
> Moreover, the finder of fact must assess the credibility of deposition testimony. . . . A video deposition, unlike a typed transcript, allows a trial jury to consider the demeanor of a witness while testifying.
>
> . . . .
>
> The video deposition is allowed because it is a superior method of conveying to the fact finder the full message of the witness in a manner that assists the fact finder in assessing credibility. [56]

Similar expressions of judicial approval are legion.[57] Courts have expressed a particular preference for video presentation of deposition testimony in jury trials, and there is no reason to believe that a judge in a bench trial or evidentiary hearing would not also prefer video over the cold reading of a stenographic transcript.

---

55. 156 F.R.D. 130 (E.D.N.C. 1994).

56. *Id.* at 131. One commentator has suggested that as much as 60% to 93% of all communication is non-verbal. Berch, *supra* note 16, at 360.

57. *See, e.g.,* Commercial Credit Equip. Corp. v. Stamps, 920 F.2d 1361, 1368 (7th Cir. 1990) ("Videotaped depositions are a necessary and time effective method of preserving witnesses' time and allocating precious court and judicial time in this age of advanced court technology and over-crowded court calendars."); Gillen v. Nissan Motor Corp. In U.S.A., 156 F.R.D. 120, 122 (E.D. Pa. 1994) ("Videotaped reenactments and depositions can help parties better understand what occurred in a given action, especially where events cannot be described adequately by stenographic means alone."); *Weseloh-Hurtig,* 152 F.R.D. at 201 ("Videotape depositions are considered a superior means of presenting the testimony of an absent witness, because they allow the jury to better assess the credibility of the witness."); *Meredith,* 814 F. Supp. at 1006 (same); Rice's Toyota World, Inc. V. Southeast Toyota Distrib., Inc., 114 F.R.D. 647, 649 (M.D.N.C. 1987) ("Video depositions can markedly increase accuracy and trustworthiness. In addition, to the extent that a video deposition reduces tedium, the fact-finder's concentration and attention will be enhanced, again to the benefit of the decision process.").

Presenting video deposition testimony as evidence implicates a variety of issues. First, as previously discussed, a transcript of the relevant portions of the video deposition must be presented to the court. Since an adverse party may request that omitted portions of the deposition be presented "which ought in fairness to be considered with the part introduced,"[58] much of the deposition often will have to be transcribed. Second, any presentation of video deposition testimony at trial obviously must conform to the Federal Rules of Evidence, which, in turn, raise a host of questions with respect to the handling of objections and editing of the videotape.

Rule 30 does not differentiate between video and stenographic depositions with respect to the standard operating procedures for handling objections.[59] Ideally, the parties and the court will resolve any objections prior to trial after reviewing the stenographic transcript of the video deposition.[60] Resolving objections during the trial is likely to be too unwieldy, as the presenting party may encounter technical difficulties in stopping the tape and fast-forwarding past objectionable portions. Indeed, at least one court has forbidden such a solution:

> Counsel should be advised that if objections to questions and/or answers are subsequently sustained, the court does not permit the portions of the videotape containing the objectionable questions and/or answers to be played in the presence of the jury. In the court's experience, most videotape operators will attempt to merely play through the objectionable portions while turning the sound off. As a result, the jury is required to watch a portion of the videotape without hearing what is being said. This is a waste of the jury's time, and will not be allowed in this court. If objections to questions

---

58. Fed. R. Civ. P. 32(a)(4).

59. In this regard, the primary change made by the 1993 amendments was to limit the scope of permissible objections:

> Any objection to evidence during a deposition shall be stated concisely and in a non-argumentative and non-suggestive manner. A party may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion [to terminate the deposition because of unreasonable, bad faith examination].

*Id.* 30(d)(1), (3).

60. Prior practice was to incorporate into Rule 30(b)(4) orders procedures for ruling on objections before trial. *See, e.g.*, ETSI Pipeline Project v. Burlington Northern, Inc., B-84-979-CA (E.D. Tex. 1988); *In re* A.H. Robbins Co., 575 F. Supp. 718, 722-23 (D. Kan. 1983); Farahmand v. Local Properties, Inc., 88 F.R.D. 80, 85 (N.D. Ga. 1980). There is no indication that courts under the new Rules would deviate from this practice.

and/or answers are sustained, it will be necessary for the videotape operator to prepare an edited version of the videotape, displaying only the non-objectionable portions of the deposition. Such an edited tape should be made available for opposing counsel's review prior to displaying it to the jury. As an alternative, the non-objectionable portions of the deposition can be read to the jury.[61]

The editing issues presented by objections segue to the question whether, and to what extent, courts will permit rearrangement and integration of video deposition testimony to be presented to the jury. There is authority under the Federal Rules of Evidence for courts to "exercise reasonable control over the mode and order of interrogating witnesses" in order to make the presentation an effective means of ascertaining truth, to avoid needless consumption of time, and to protect witnesses from embarrassment or harassment.[62] In one early case, a bankruptcy judge held that editing videotaped deposition testimony was essential because "[t]his Court simply did not have the time on its busy trial calendar to view [the seventeen hours of] videotapes in their entirety."[63] Although the court would have preferred a mutual editing process conducted by both parties, it permitted the debtor to introduce edited video testimony that the debtor prepared on its own.[64] The court held that the creditor would have ample opportunity to supplement the record with excised portions of the tape or stenographic transcripts if it so chose.[65] Common sense supports the judge's ruling. It is difficult to see why litigants should have less latitude in selecting portions of a video deposition to be shown at trial than in designating pages and lines from a stenographic transcript.

Practitioners must recognize, however, that editing and integrating video deposition testimony, especially combining various depositions, has limits. A court may prohibit the presentation of excessively edited testimony if the court deems the presentation to be

---

61. Spangler v. Sears, Roebuck & Co., 138 F.R.D. 122, 126 n.3 (S.D. Ind. 1991).
62. FED. R. EVID. 611(a).
63. Mark IV Properties, Inc. v. Club Dev. & Management Corp., 12 B.R. 854, 860 (Bankr. S.D. Cal. 1981).
64. *Id.* at 859.
65. *Id.* at 859-60.

confusing, or to prevent the drawing of false inferences.[66]   The cautious practitioner will seek his opponent's agreement, or a court order, before attempting to integrate testimony from multiple depositions.   While some editing is desirable and necessary, an infomercial-style production—cutting and pasting testimony from multiple deponents—is likely to draw an objection and subsequent exclusion.

Trial court judges increasingly have begun to realize that the question and answer format is often an inefficient way to present evidence, and that a great deal of time can be saved by permitting or requiring litigants to summarize deposition testimony in narrative form.[67]   In addition to saving time, such a procedure may add interest and make deposition testimony easier for the jury to assimilate. Where the litigants agree to present deposition testimony in summary form, the product of their agreement is indistinguishable from stipulated testimony.   Another vehicle that might be used to justify deposition summaries is Federal Rule of Evidence 1006, permitting "[t]he contents of voluminous writings . . . which cannot conveniently be examined in court [to] be presented in the form of a . . . summary. . . ."[68]

Often a litigant will find it more effective to combine a summary of non-controversial deposition segments with verbatim presentation of critical questions and answers.[69]   Such a procedure is especially effective with videotaped depositions, which permit the critical questions and answers to be played on-screen, following the narrative summary.   In the *ETSI* litigation, Judge Parker even permitted the narrative portion to be videotaped, creating a sort of "evening news" format that provided additional emphasis for key testimony.   It is

---

66. *See* Beard v. Mitchell, 604 F.2d 485, 503 (7th Cir. 1979) (upholding trial court's ruling against plaintiff seeking to submit testimony from four separate sources edited into chronological order).

67. In the *ETSI* litigation, for example, Judge Parker manifested his favorable view of summaries and, in fact, expressly required summarization of depositions.   ETSI Pipeline Project v. Burlington Northern, Inc., B-84-979-CA (E.D. Tex. 1988) (Mar. 16, 1988 pre-trial order).

68. FED. R. EVID. 1006.

69. *See* ETSI Pipeline Project v. Burlington Northern, Inc., B-84-979-CA (E.D. Tex. 1988) (Mar. 16, 1988 pre-trial order).

likely that, with the growing prevalence of video depositions, other courts will follow suit.

The combination of a videotaped deposition and digital recording technologies, such as video compact discs or laser discs, affords the litigant a powerful impeachment tool. Few experiences are more chastening to the witness than seeing his face on the video monitor—or, even better, on a large-screen TV—contradicting (in his deposition) the testimony he has just given in court.

Of course, video impeachment requires advance planning. The segments of a witness's deposition that one anticipates may be repudiated at trial must be identified in advance and digitally recorded. A sheet of bar codes and a light pen allow the lawyer in the courtroom instantly to retrieve the pre-selected passages.[70] Then when the witness at trial strays from his deposition testimony, a swipe of the pen allows the attorney to impeach the witness by video.

A final issue respecting the use of video depositions at trial centers on their use in the summation or closing argument. One witness's testimony can be juxtaposed with that of another witness to show that they have contradicted each other, or to emphasize the second witness's comment on the first witness's testimony. Testimony of multiple witnesses can be integrated to show that all sounded a common theme. Snippets of a single witness's testimony can be cut out and strung together to vivify his position on a particular issue. Although no reported cases approve or disapprove of these techniques, video depositions should be legally equivalent to other evidence and thus available for any non-distorting use in closing argument.[71]

## IV. Miscellaneous Practice Issues

Having examined the procedures for taking and presenting video depositions, it is necessary to take a step back and consider whether, and under what circumstances, video depositions are preferable to the traditional stenographic deposition. While non-stenographic depositions may be helpful in many circumstances, their use is not a

---

70. Neubauer, *supra* note 16, at 62.
71. *See* Henke, *Videotaped Depositions, supra* note 1, at 165.

"one-size-fits-all" proposition. This Section canvasses the different factors that an attorney should consider when deciding whether to record a deposition by video rather than typical stenographic means.

## A.  Choosing the Video Deposition

As already discussed, several courts prefer video deposition testimony, and Federal Rule of Civil Procedure 32 establishes a presumption in favor of video for presenting substantive evidence.[72] The key consideration for these courts, and presumably for the Advisory Committee in drafting Rule 32, is that video depositions provide the fact finder with a far greater amount of information than a stenographic transcript.[73]

Moreover, empirical studies have demonstrated that jurors receive and retain information far better through both visual and aural means than through hearing alone. Advocating for amendments to the Federal Rules to permit widespread use of video depositions, one commentator writes:

> Videotaped depositions both engage the juror's mind and keep him involved with the testimony so that he remembers it during deliberations, which may occur days, weeks, or even months after he hears the testimony. Studies indicate that when jurors see and hear evidence simultaneously, they are able to recall sixty-five percent of the testimonial evidence after a three-day interval. If jurors hear testimony without accompanying visual cues, their recall falls dramatically to about ten percent after the same three-day period. Because an individual juror retains only about sixty percent of all testimonial evidence, whether presented live or through other vehicles, any increase in retention level that video affects has persuasive implications for the outcome of a case.[74]

Other advantages of the video deposition are that it relieves boredom, and it communicates information to jurors by television, the primary medium by which most Americans receive information today.[75] Moreover, use of video depositions may alleviate scheduling conflicts

---

72. *See supra* text accompanying notes 16, 34, & 56.
73. *See* Riley v. Murdock, 156 F.R.D. 130, 131 (E.D.N.C. 1994).
74. Berch, *supra* note 16, at 372 (footnotes omitted).
75. *Id.*

involving experts[76] and permit witnesses reluctant to testify in open court, such as juveniles, the opportunity to testify effectively.[77]

The decision to proceed with a video deposition, however, is not without pitfalls. Because video depositions are such an effective means of providing information, practitioners must make the tactical decision whether their witness will make a favorable *visual* impression on a jury. Not only must a witness in a video deposition be telegenic, but he or she also must be extremely well prepared. Pregnant pauses in the course of examination, expressions of surprise or disdain during questioning, use of unnecessary verbal tics (e.g., "ums" and "ahs"), and looking away from the camera all may convey dishonesty, or at least a certain lack of credibility, to the fact finder.[78]

In addition, the attorney's own style of questioning may become subject to scrutiny at a video deposition. Conduct that a stenographic transcript could not adequately convey—such as aggressive examination, abusive treatment of opposing counsel or the witness, and witness coaching—may be preserved in full detail on video.[79] Therefore, the video deposition is a powerful means of curbing discovery abuse. Even a defending attorney should consider having a stenographic deposition also recorded by video if obstructionist conduct is expected from opposing counsel.

---

76. *See, e.g.*, Workman v. Chinchinian, 807 F. Supp. 634, 648 (E.D. Wash. 1992) ("[T]here remains the unavoidable fact that after counsel has spent numerous hours consulting with a physician or surgeon during trial preparation, the physician or surgeon may be summoned for a medical emergency on the day of trial. Having the expert's testimony on videotape will eliminate this problem.").

77. *Cf.* Note, *The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations*, 98 HARV. L. REV. 806, 813-16 (1985) (describing statutes designed to allow videotaped testimony by abuse victims).

78. *See* Berch, *supra* note 16, at 361-66; Neubauer, *supra* note 16, at 60-61.

79. *See* Kelly v. GAF Corp., 115 F.R.D. 257, 258-59 (E.D. Pa. 1987) (holding that defense counsel's numerous frivolous objections during course of medical expert's video deposition deprived plaintiff in asbestos case of opportunity to present case properly and required new trial); Neubauer, *supra* note 16, at 61 (recommending that video deposition be used to curb "Rambo" litigation tactics). Indeed, in the *ETSI* case, Judge Parker permitted a particularly objectionable portion of a video deposition, in which attorneys were harassing the examining attorney, to be shown to the jury unedited, as a sanction.

## B.  Abuse of the Video Deposition

As with other discovery tools, the video deposition itself may be subject to abuse.  For example, members of the press or politicians may use a video deposition of a prominent public figure, and the attendant power to compel appearance, to prepare material that could be put to other purposes, such as news "video bites" or negative campaign commercials.  Consequently, there are cases in which deponents have refused to appear for video depositions or have sought protective orders to limit public access to, or use of, the videotape after the deposition.

A recent and well-publicized example occurred at the criminal trial of James and Susan McDougal and Arkansas Governor Jim Guy Tucker for charges arising out of the Independent Counsel's "Whitewater" investigation.[80]  President Clinton was subpoenaed by the defense but was permitted to testify by video deposition.  During the trial, an edited version of the deposition was presented to the jury, and the press and public were provided with a stenographic transcription of the portions shown.  Afterwards, a number of media organizations filed motions demanding access to both the edited and unedited videotapes.  The court denied the request,[81] holding *inter alia* that potential misuse of the tapes warranted their remaining under seal:

> In this regard, the Court does not believe that the press has improper motives in obtaining the videotape or would seek to distort or misuse it. Nevertheless, once released and rebroadcast, the press cannot maintain control over individuals who might copy the broadcast and edit it to suit their purposes.[82]

Echoing this concern, at least two other courts have issued protective orders with respect to video depositions involving

---

80.  United States v. McDougal, 934 F. Supp. 296, 297-98 (E.D. Ark. 1996) (issuing subpoena to President Clinton to testify by video deposition).

81.  United States v. McDougal, No. LR-CR-95-173, 1996 WL 466587 (E.D. Ark. June 11, 1996), *aff'd*, 103 F.3d 651 (8th Cir. 1996).

82.  *Id.* at *4.

prominent public figures.[83]  Rule 26(c) of the Federal Rules of Civil Procedure provides an avenue by which a deponent may seek a protective order either to limit the method by which discovery may be taken or to seal a deposition.[84]  A protective order limiting or prohibiting public dissemination of a video deposition should address the concerns outlined above without preventing parties from taking and using the deposition in the litigation itself.  .

## C.  Video Depositions and State Practice

Although this Article has focused on federal · practice, it is important to note that most states also permit video depositions subject to various terms and conditions.  Generally, the state rules follow three approaches that track the evolution of Rule 30 of the Federal Rules of Civil Procedure.  First, there are states in which a non-stenographic deposition may be taken only upon motion and court order.[85]  Second, there are states that permit video depositions either upon court order or by stipulation.[86]  Third, there are a number of states that have adopted the unilateral notice approach of the Federal

---

83.  *See* Westmoreland v. CBS, Inc., 584 F. Supp. 1206, 1212-13 (D.D.C. 1984) (holding in defamation action that former CIA director, a non-party witness, was not required to submit to video deposition because material thereby generated could subsequently become subject to dissemination and misuse), *aff'd in part & rev'd in part*, 770 F.2d 1168 (D.C. Cir. 1985); Inhofe v. Wiseman, 772 P.2d 389, 392-94 (Okla. 1989) (upholding order to compel state politician to submit to video deposition but issuing writ of mandamus requiring entry of protective order to prevent deposition's dissemination).

84.  *See* FED. R. CIV. P. 26(c)(3), (6).

85.  *See* ARK. R. CIV. P. 30(b)(4); CONN. R. SUPER. CT. CIV. § 244(e); IOWA R. CIV. P. 140(b)(4); MONT. R. CIV. P. 30(b)(4); N.D. R. CIV. P. 30(b)(4); WIS. STAT. ANN. § 804.05(2)(c) (West 1996).

86.  *See* ALA. R. CIV. P. 30(b)(4); ARIZ. R. CIV. P. 30(b)(4); D.C. SUPER. CT. R. CIV. P. 30(b)(4); GA. CODE ANN. § 9-11-30(b)(4) (1996); HAW. R. CIV. P. 30(b)(4); KAN. STAT. ANN. § 60-230(b)(4) (1996); MASS. R. CIV. P. 30(b)(4); MINN. R. CIV. P. 30.02; NEV. R. CIV. P. 30(b)(4); N.H. SUPER. CT. R. 45; S.C. R. CIV. P. 30(b)(4); TENN. R. CIV. P. 30.02(4)(A); UTAH R. CIV. P. 30(b)(4); VT. R. CIV. P. 30(b)(4); W. VA. R. CIV. P. 30(b)(4); WYO. R. CIV. P. 30(b)(4).

Rules.[87] Moreover, the National Conference of Commissioners on Uniform State Laws promulgated the Uniform Audio-Visual Deposition Act,[88] which prescribes particular procedures to be followed to ensure accuracy. At this point, however, only three jurisdictions have adopted the Uniform Act.[89] It appears, therefore, that much of the previous discussion would apply, by analogy, to the states that have adopted various versions of the federal rule.

## D. *The Video Trial*

This final Section of the Article attempts to peer into the future of litigation in the so-called "information age." The march of progress in multimedia technology already has begun to revolutionize the manner in which business is conducted in many sectors of the economy. Certainly, litigation is not to be left behind. While heretofore this discussion has been confined to the video deposition, we should now consider the *video trial* as the potential wave of the future.

Advanced audio-visual capabilities would enable a trial to be entirely pre-recorded and presented to the fact finder at a later date. According to one commentator, "[e]ventually, it will be feasible to package video materials from pretrial events into a single program that will be played for the factfinder; the litigator will then become a producer."[90] At an extended pre-trial conference, the court could resolve objections and any inadmissible portions of the program could be excised. Although the incredulous may consider this to be fantasy,

---

87. *See* COLO. R. CIV. P. 30(b)(2); DEL. SUPER. CT. R. CIV. P. 30(b)(1); FLA. R. CIV. P. 1.310(b)(4); ILL. ST. S. CT. R. 206(2); IND. R. TR. P. 30(b)(4); KY. R. CIV. P. 30.02(4); LA. CIV. CODE ANN. art. 1440 (West 1996); ME. R. CIV. P. 30(b)(1), (4); MICH. R. CT. 2.315; MISS. R. CIV. P. 30(b)(4); MO. S. CT. R. 57.03(c); N.Y. S. CT. R. § 202.15(a); N.C. R. CIV. P. 30(b)(4); OHIO R. CIV. P. 30(B)(3); OR. R. CIV. P. 39(c)(4); R.I. SUPER. CT. R. CIV. P. 30(b)(2); TEX. R. CIV. P. 202(1).

88. UNIF. AUDIO-VISUAL DEPOSITION ACT, 12 U.L.A. 56 (1996).

89. *See* Prefatory Note to Uniform Audio-Visual Deposition Act, 12 U.L.A. 51, 51 (1996); *see also* N.D. R. CIV. P. 30.1; TENN. R. CIV. P. 30.02; VA. CODE ANN. §§ 8.01-412.2 to 8.01-412.7 (Michie 1996). Both Tennessee and North Dakota adopted the Uniform Act as a supplement to a version of FED. R. CIV. P. 30.

90. Henry H. Perritt, Jr., *Video Depositions, Transcripts and Trials*, 43 EMORY L.J. 1071, 1085 (1994).

pre-recorded video trials already have taken place. Judge Charles R. Richey relates one of his experiences:

> In one recent medical malpractice case, I ordered, with the agreement of the parties, that all testimony be taken on videotape. I then directed the parties, pursuant to a [Federal Rules of Civil Procedure] Rule 16 order, to file proposed findings of fact and conclusions of law, and to direct me, in their submissions, to the most crucial portions of the testimony taken. After the videotapes and requisite documents are submitted, I will view the videotapes and then hear oral argument from the parties. In this way, the parties can have a resolution of their case much sooner than if they were forced to await a date on my overcrowded trial calendar.[91]

Similarly, a state trial judge made the following observation:

> As a Philadelphia judge, I have conducted video arraignments and mandated and conducted 'Prerecorded Videotape Trials' in asbestos cases, where all the testimony had to be presented on videotape, and only opening and closing arguments were live. . . .
> I certainly wouldn't want to do it . . . in a first degree murder case. The problem we have and will probably continue to have is the increase in volume and decrease in funding for the courts.[92]

And in one reported prisoner's civil rights case, the court indicated that it intended to have all witnesses testify by video deposition and try the case based on pre-recorded testimony and legal argument.[93] The desirability of avoiding the inevitable drain of time and resources inherent in a "live trial" may induce an increasingly greater number of judges to pursue this option.

This is not to say, however, that the video trial necessarily is superior to the live presentation of witnesses to a judge or jury. As one proponent of the video trial acknowledges, video "may exaggerate certain aspects of witness conduct. This is a well-recognized phenomenon in comparing live theater with motion picture productions. There will, therefore, be some distortion of the evidence by presenting it to factfinders through a video program."[94] More to the point, there would be a significant loss in intimacy among the witnesses, the attorneys, and the fact finder, particularly

---

91. Charles R. Richey, *Rule 16 Revisited: Reflections for the Benefit of Bench and Bar*, 139 F.R.D. 525, 535 (1991).

92. Judge Richard B. Klein, *The Future is Now in Video* (internet discussion Mar. 7, 1994), *quoted in* Perritt, *supra* note 90, at 1083-84.

93. Lucien v. McLennand, 95 F.R.D. 525, 526 (N.D. Ill. 1982).

94. Perritt, *supra* note 90, at 1086.

a jury, if a trial were conducted entirely by video. Judge Klein asks, "Do we want a holographic courthouse? Do we want . . . jurors to watch from home, and deliberate by teleconference? Where can we meet our volume/fiscal problems by technology, but where must we resist the temptation just because the technology is there?"[95] One might posit that most litigators, these authors included, would not view the end of the live trial as a positive development. In highly document-intensive bench trials where few witnesses are required, however, the video trial may be the preferred course.

## V. Conclusion

The 1993 amendments to the Federal Rules of Civil Procedure, particularly Rule 30, have cleared any remaining obstacles to the widespread use of video depositions in federal practice. As this Article has demonstrated, the video deposition is an effective means of preserving live testimony for trial and curbing discovery abuse. Some issues remain with respect to the procedures to be followed in editing and integrating video deposition testimony for trial presentation. On the whole, however, new Rule 30(b)(2) reflects the fact that the video deposition is no longer a dubious discovery practice. On the contrary, the few cases decided since the amendments were adopted make clear that use and development of the video deposition should be enthusiastically encouraged.

---

95. Klein, *supra* note 92, at 1084.